**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| UNITED STATES OF AMERICA | : | CRIMINAL |
|---|---|---|
| v. | : | NO. 12-488 |
| KEENAN SAWYER | : | |

# MEMORANDUM OPINION

**Savage, J.**                                                                                             **March 13, 2013**

The defendant, Keenan Sawyer, moved to suppress a gun the police seized from inside a house into which he had run after the police approached and ordered him to raise his hands. He contended that the police lacked probable cause to arrest him and illegally entered the house without a warrant. He also moved to suppress a statement he gave the police after his arrest.

After an evidentiary hearing, we denied his motion to suppress the gun and granted his motion to suppress his statement. He later entered a plea of guilty pursuant to a plea agreement that allowed him to preserve his right to appeal the denial of his suppression motion. We shall explain the rationale for the decision denying his motion to suppress the gun and supplement our findings of fact.

## Background

The events leading up to Sawyer's confrontation with the police that resulted in the seizure of the gun on June 26, 2012 started with a phone call to Special Agent Robert J. Wescoe of the Bureau of Alcohol, Tobacco and Firearms ("ATF") from an informant thirteen days earlier. Based on the detailed information that the informant provided him and his own subsequent observations, Wescoe decided to confront Sawyer whom he knew

was a convicted felon and believed was in possession of a gun.  He devised a plan to coordinate several law enforcement officers to effectuate the confrontation.

As part of the plan, Philadelphia Police Detective Christopher Marano approached Sawyer who was sitting on common steps leading up to 876 and 878 North 47th Street. When he ordered Sawyer to raise his hands, Marano saw him grab an object in his waistband under his shirt.  Sawyer then ran into the house at 876.  At that point, believing Sawyer had a gun, Marano ran after him into the house.  Once inside, he saw Sawyer stuff a gun into the sofa between an arm rest and a cushion.

As Sawyer attempted to run from the premises, Marano and another officer apprehended him.  They then retrieved the gun from the sofa before transporting Sawyer to headquarters.

**Analysis**

Wescoe and his team members had reasonable suspicion to stop and investigate, if not probable cause to arrest, Sawyer based upon the facts supplied by the confidential informant and corroborated by their personal observations.  The information was provided by a reliable, known informant, not an anonymous tipster.  The informant had provided Wescoe information over a seven-year period that resulted in successful prosecutions.  His specific information in this case was based on his personal observations of several incidents rather than a single one.  His reports were detailed.  *See* Findings of Fact.  He described the make and model of the gun, reflecting intimate knowledge.  As a paid informant, he had an incentive to give only true information.  If he were to embellish or fabricate, he would have risked ending his relationship with Wescoe.

2

Wescoe and team members corroborated the information before acting on it. From a surveillance spot in the next block, on two separate days, they saw Sawyer wearing clothing and doing what the informant had said he was. When Marano approached Sawyer, he saw him grab an object in an area the informant had said Sawyer was carrying a gun.

Although they had done so, the agents did not necessarily need to corroborate the information. So long as the underlying circumstances of the information and the informant's reliability are sufficient, corroboration is not necessary. *United States v. Marino*, 682 F.2d 449, 453 (3rd Cir. 1982).

An informant's tip alone may supply probable cause where the informant's veracity or reliability and the basis of his knowledge is known. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). When assessing whether a tip establishes probable cause, we look at the totality of the circumstances. *Id.* at 233. We weigh both the informant's reliability and his basis of knowledge, keeping in mind that "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability". *Id.* at 233 (citations omitted).

In *United States v. Brown*, the Third Circuit listed factors that inform the reliability inquiry:

> (1) The tip information was relayed from the informant to the officer in a face-to-face interaction . . . .
>
> (2) The person providing the tip can be "held responsible if [his] allegations turn out to be fabricated."
>
> (3) The content of the tip is not information that would be available to any observer. . . . "[T]he tip could not have been generated by the general

3

public, nor based solely on observation."

  (4) The person providing the information has recently witnessed the alleged criminal activity.

  (5) The tip predicts what will follow, as this provides police the "means to test the informant's knowledge or credibility . . . ." Predictive information is also useful in that it "can reflect particularized knowledge."

United States v. Brown, 448 F.3d 239, 250 (3d Cir. 2006) (citations omitted).

The indicators of the informant's reliability set out in *Brown* are all present in this case. The tip was provided in a face-to-face meeting between Wescoe and his informant. The informant could have been held accountable if he gave false information because Wescoe knew him and was paying him for information. Having come from inside a residence with Sawyer, the information was not available to any observer. The informant saw the criminal activity himself. His tip also predicted, as confirmed by the officers' observations, that Sawyer would have the gun on his person.

The plan was to stop Sawyer to investigate. The agents, at least, had reasonable suspicion to do so on the basis of the known informant's tip that Sawyer had a gun on him. That reasonable suspicion was elevated to probable cause when Sawyer ran. *See United States v. Navedo*, 694 F.3d 463, 472 (3d Cir. 2012) (citing *United States v. Laville*, 480 F.3d 187, 195 (3d Cir. 2007). Marano saw him gripping a hard object in his waistband. At that point, as any reasonably objective officer would have, Marano believed Sawyer had a gun.

A police officer may make a warrantless arrest where there is probable cause to believe that a crime has been committed or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). The probable cause determination is an objective one. *Maryland*

4

*v. Pringle*, 540 U.S. 366, 371 (2003). The arresting officer's subjective belief is irrelevant. *Whren v. United States*, 517 U.S. 806, 812-13 (1996). Thus, in determining whether there was probable cause, we must decide whether, looking at the events leading up to the arrest, an "objectively reasonable police officer" would have had probable cause. *Pringle*, 540 U.S. at 371.

At the time Marano ran after Sawyer, he had probable cause to believe that Sawyer had committed or was committing a crime. Prior to approaching him, Marano had been told that Sawyer, whom he knew had a felony conviction, had been seen with a gun on several occasions in recent days, including that day. His source of information was Wescoe who had received reliable information from a confidential informant. Once Sawyer ran as he approached him, Marano had probable cause to arrest him.

Sawyer contends that the police were not justified in entering into the house where he had run without a warrant. He claims that he had a reasonable expectation of privacy in the house. While corroborating what his informant had told him, Wescoe and others had observed Sawyer going back and forth between houses on both sides of the 800 block of North 47th Street.

Sawyer relies upon the testimony of Deborah Seals who resided at 882 North 47th Street. She testified that she had seen Sawyer coming and going from 876 North 47th Street regularly. Her testimony was vague and ambiguous on the issue of whether Sawyer was residing there at the time. Seals presumed from seeing him at that place that he was staying there at some point in time. Her testimony did not establish that Sawyer had an ownership or possessory interest in the property that would give rise to a reasonable expectation of privacy. Nevertheless, even if Sawyer did reside in the house, the

5

warrantless entry into the house did not invalidate the search.

The Fourth Amendment right is personal and protects an individual against an unreasonable search of his house. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). This personal right extends to any place where the individual has a legitimate expectation of privacy, not just to his home. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). It includes a place where the individual is an overnight guest. *Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990). "[B]ut one who is merely present with the consent of the householder may not" challenge a search of the house. *Carter*, 525 U.S. at 90.

Police may not enter a person's home to make a warrantless routine felony arrest. *Payton v. New York*, 445 U.S. 573, 576 (1980). But, they may pursue an individual whom they have probable cause to arrest into that individual's house. *Warden v. Hayden*, 387 U.S. 294 (1967). In *United States v. Santana*, the Supreme Court held that an individual could not "thwart an otherwise proper arrest" by retreating into his house. 427 U.S. 38, 42-43 (1976). The *Santana* court relied upon its holding in *Warden* that police, who had probable cause to arrest an armed robber, had the right to make a warrantless entry into a house to arrest the robber and to search for weapons.

*Santana* and *Warden* make clear that hot pursuit of one who is armed is justified by exigent circumstances. As the *Warden* court noted, speed may be essential in exigent circumstances, justifying entry into the home in fresh pursuit of a suspect. 387 U.S. at 298. In short, *Santana* and *Warden* stand for the principle that a warrant is not necessary to enter a house where the police had probable cause to arrest an armed suspect whom they believed was in the house in order to prevent the destruction of evidence or endangerment

6

to police and others.

Even if Sawyer had an expectation of privacy, there were exigent circumstances justifying a warrantless entry into the property. Marano was in fresh pursuit of an armed felon. He was concerned about losing sight of Sawyer who had a gun. Based on his police experience, what the informant had said, what he had seen and how Sawyer reacted, he reasonably concluded that Sawyer had a gun. Once Sawyer ran into the house, there was a risk that he could hide the gun or use it. Those circumstances outweighed any interest in possession. *See United States v. Place*, 462 U.S. 696, 701-702 (1983).

Because the police had probable cause to arrest Sawyer and knew he had a gun when he ran into the house, the police were justified in pursuing him into the house. After seeing him stuff the gun into the sofa, they legally seized it. Therefore, we denied the motion to suppress the gun.